IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MICHAEL WILKERSON,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 13-1723** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Michael Wilkerson ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 12).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 12) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1987, has a GED, and previously worked as a seasonal worker, cleaner, store stocker, and security guard.  R. at 18, 60, 66.  On May 18, 2010, Plaintiff applied for SSI, alleging disability beginning on September 9, 1987 (later amended to September 6, 2009), due to back injury and depression.  R. at 13, 59, 164-70, 189.  The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 171-75, 178-82.  On May 14, 2012, ALJ Eugene M. Bond held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 186-99.  On June 14, 2012, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of September 6, 2009.  R. at 10-20.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 12, 2013.  R. at 5-9, 185.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 14, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

The ALJ noted in his decision that Plaintiff had fallen from a three-story building and had broken his back on September 6, 2009, "sustaining an L1 compression fracture to both anterior and posterior elements." R. at 15. While hospitalized, Plaintiff "underwent a T11 through L3 fusion with laminectomies on September 9, 2009." R. at 15. "Following the procedure, [Plaintiff] underwent physical therapy and occupational therapy which were prescribed." R. at 15. "On September 13, 2009, [Plaintiff] was doing well and ambulating to the bathroom. He had 5/5 strength in his legs bilaterally." R. at 15; *see* R. at 116-29.

On June 16, 2010, Plaintiff reported that "he no longer has symptoms in his lower extremities" and "stated that his spine does not cause him any significant pain, and he is doing well following his surgery." R. at 16; *see* R. at 132.

**A.      State Agency Medical Consultants**

On August 10, 2010, S. Rudin, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 136-43. Dr. Rudin opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. R. at 137. He could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 138. Further, Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 139-40.

On February 3, 2011, T. Spurgeon, M.D., found insufficient evidence of a mental impairment. R. at 145-58. Dr. Spurgeon noted the lack of a current mental status examination and that Plaintiff was not cooperating with efforts to contact him. R. at 157.

**B.     James M. Weiss, M.D.**

On March 23, 2011, Dr. Weiss, an orthopedic surgeon, noted the following:

> [Plaintiff] has residual neurologic symptoms and chronic back pain. The likelihood is he has a nonunion because of his smoking. He certainly is disabled from the heavy type of labor that he does and should try to seek disability for this. He would have to have vocation retraining to do some type of sedentary work. . . . Stopping smoking would be . . . another . . . thing he could do to try to improve his chances of having the possibility of having some overall improvement.

R. at 162.

Almost a year later, on March 16, 2012, Dr. Weiss reiterated his opinion that Plaintiff

> is disabled from the heavy type of labor that he had done prior to his injury and this would be the case for the foreseeable future as he likely has a nonunion in his lumbar spine and ultimately if he were to stop smoking, likely would need to undergo revision surgery.

R. at 160. Sedentary work would be limited, "as he can only sit for about an hour and he does not have the education to perform administrative type tasks." R. at 161.

**C.     Hearing Testimony**

   **1.     Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony as follows:

> At the hearing, [Plaintiff] testified that he received a GED, and can read, write, and do simple math such as adding and subtracting. He testified that he worked for the Dept. of Highway Transportation in the past and also as a security guard (unarmed) at a fairground. He stated that he could not remember where he worked in his last job.
>
> [Plaintiff] testified that he does not drive an automobile and has never had a driver's license. He stated that he does his own cooking, but that his mother does the cleaning and the grocery shopping. On a typical day, [Plaintiff] testified that

4

he gets up in the morning, takes a shower, eats a quick breakfast, watches a little TV, and walks around a little to exercise his legs. After eating lunch, [Plaintiff] indicated that he watches a little more TV. Following dinner, [Plaintiff] stated that he goes to bed. He testified that he does not participate in any outside activities.

[Plaintiff] testified that he was at a party drinking when he fell off the 3rd floor balcony of his friend's house on his back. He stated that he has had surgery on his back, but Dr. Weiss has indicated [Plaintiff] is to have additional surgery which has not yet been scheduled. [Plaintiff] also stated that he has no insurance. [Plaintiff] testified that he stopped taking pain medication after leaving the hospital since he does not want to become addicted. He also stated that the last time he had alcohol was 2 weeks ago. He stated that he had 2-3 beers, Coors light.

[Plaintiff] testified that he has problems sitting due to the pain and also has problems lying in bed. He stated that he did not get to sleep until 3:00 a.m. the other night.

R. at 17; *see* R. at 189-94.

### 2. VE Testimony

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience having the capacity to do unskilled, sedentary work[2] with "a sit/stand option at will, limited dominant hand usage, and limited general public contact" could perform jobs such as a surveillance monitor, document preparer, and ink printer. R. at 195-96. This same hypothetical person with the capacity to perform light work[3] could work as a finish inspector, router, or sorter. R. at 196-97.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

III

**Summary of ALJ's Decision**

On June 14, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of September 6, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a surveillance systems monitor, document preparer, or ink printer.  R. at 15-19.  The ALJ accordingly found that he was not disabled from September 6, 2009, through the date of the decision.  R. at 19.

In so finding, the ALJ found that Plaintiff had the RFC "to perform a range of low-stress, unskilled, sedentary work" (R. at 18), specifically, "sedentary work, unskilled, with a sit/stand option at will, limited dominant hand usage, and limited general public contact" (R. at 17). Further, regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 18.  The ALJ also weighed the opinion evidence in the record, giving (1) "significant weight" to the opinions of the state agency medical consultants "because their opinions are largely consistent with the evidence of record as a whole" and (2) "little weight" to Dr. Weiss' opinion because "Dr. Weiss did not define [Plaintiff's] functional limitations with any degree of specificity."  R. at 18.  The ALJ noted that Dr. Weiss' opinion that Plaintiff is disabled "is merely conclusory and

constitutes an ultimate conclusion that is reserved to the Commissioner." R. at 18. "In sum, [Plaintiff's] activities of daily living, the medical and other evidence of record, and the findings of the State Agency consultants suggest that [Plaintiff] can sustain a greater capacity than he described in connection with his application and at the hearing." R. at 18. "Given this evidence, the undersigned concludes that [Plaintiff's] subjective complaints and alleged limitations are not fully persuasive." R. at 18.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production

and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**<u>Substantial Evidence Standard</u>**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

**A.   ALJ's Credibility Determination**

Plaintiff asserts that the ALJ erroneously evaluated his subjective complaints. Pl.'s Mem. Supp. Mot. Summ. J. 8-11, ECF No. 10-1. He maintains that the ALJ "failed to provide any cogent explanation to support his credibility assessment." *Id.* at 10. Plaintiff further contends that the ALJ failed to consider the factors delineated in Social Security Ruling[5] ("SSR") 96-7p, so the ALJ "applied an improper standard to the evaluation of the Plaintiff's subjective complaints, and his evaluation defies review." *Id.* at 10-11. As discussed further below, Plaintiff's arguments are unavailing.

When a claimant alleges disability due to pain, the ALJ must apply the Commissioner's regulations, which establish a two-step process for evaluating whether a person is disabled by pain and other symptoms. *Huntington v. Apfel*, 101 F. Supp. 2d 384, 392 (D. Md. 2000) (citing *Craig*, 76 F.3d at 594; 20 C.F.R. §§ 404.1529, 416.929). At the first step, the ALJ must determine that objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual pain in the amount and degree alleged by the claimant. *Id.* (citing *Craig*, 76 F.3d at 594). "At the second step of the *Craig* inquiry, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine the extent to which those symptoms limit the claimant's capacity to work." *Id.* (citing

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

*Craig*, 76 F.3d at 595; 20 C.F.R. §§ 404.1529(c)(1), 416. 929(c)(1)). At this second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information submitted by the claimant, such as the claimant's account of what aggravates the pain, medications taken to alleviate the pain, and a summary of how the pain affects daily living. *Id.* (citing 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3)).

"The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims of pain can reasonably be accepted." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). "Subjective symptoms of pain, standing alone, cannot sustain a finding of disability, and a claimant must substantiate his allegations of pain." *Id.* (citing *Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (Luttig, J., concurring); 20 C.F.R. § 404.1529). "The ALJ must make a finding regarding a claimant's credibility and should refer specifically to the evidence supporting this finding." *Id.* at 392-93 (citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam)); *see Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 338-39 (D. Md. 2003).

Here, Plaintiff argues that the ALJ "failed to provide specific reasons for the finding on credibility, supported by the evidence in the case record, as required." Pl.'s Mem. Supp. Mot. Summ J. 10, ECF No. 10-1 (quoting SSR 96-7p) (internal quotation marks omitted). The ALJ considered the evidence, however, and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. R. at 18. The ALJ found that Plaintiff's "activities of daily living, the medical and other evidence of record, and the

findings of the State Agency consultants suggest that [Plaintiff] can sustain a greater capacity than he described in connection with his application and at the hearing." R. at 18.

In this regard, the ALJ noted that Plaintiff did not drive, but he cooked his own meals, watched television, and walked around to exercise his legs. R. at 17. A claimant's daily living activities can provide substantial evidence to discount the claimant's credibility. *See Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Johnson*, 434 F.3d at 658 ("The ALJ also found [the claimant's] complaints of pain to be inconsistent with her testimony of her routine activities. [The claimant] testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor. [The claimant] also testified that she can lift approximately ten pounds. The ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1136 (N.D. Iowa 2011) (finding that substantial evidence in record of claimant's reported activities supported adverse credibility determination of ALJ, who found that claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"); *Henry ex rel. Henry v. Astrue*, Civil Action No. TMD-08-

686, 2010 WL 3199344, at *5 (D. Md. Aug. 12, 2010) ("The ALJ reviewed Claimant's activities of daily living and noted he did some household cleaning, drove, grocery shopped, read, watched television, went outside on his own, and visited family and friends.  The ALJ's consideration of Claimant's daily activities was proper based on the regulations . . . ." (citation omitted)).  Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's credibility.

Plaintiff next maintains that the ALJ failed to consider all the credibility factors under SSR 96-7p.  Pl.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 10-1.  In *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999), the plaintiff argued that "the ALJ failed to give a legitimate reason for disregarding the [plaintiff's] allegations, failed to take into consideration the factors listed in Social Security Ruling 96–7p, and did not set forth the weight he attributed to the evidence which influenced his credibility determination."  This Court in *Ketcher* noted, however, that SSR 96-7p requires an ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about that symptoms and how they affect the individual, and any other relevant evidence in the case record."  *Ketcher*, 68 F. Supp. 2d at 652.  This Court in *Ketcher* ultimately found that the ALJ in that case considered the entire record and addressed the objective evidence as well as the plaintiff's subjective complaints.  *Id.*

Here, the ALJ considered Plaintiff's "activities of daily living, the medical and other evidence of record, and the findings of the State Agency consultants" before concluding that Plaintiff's "subjective complaints and alleged limitations are not fully persuasive."  R. at 18.  Thus, the Court finds that the ALJ complied with SSR 96-7p.  *See Ketcher*, 68 F. Supp. 2d at 652.  Plaintiff's assertion to the contrary is without merit.

B.     **ALJ's RFC Assessment**

Plaintiff also contends that the ALJ erroneously assessed his RFC contrary to SSR 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 10-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 5-8. For the reasons discussed below, Plaintiff's assertion is without merit.

Plaintiff first maintains that the ALJ failed to set forth a narrative discussion under SSR 96-8p, contending that the ALJ did not explain the evidence upon which he relied to support his RFC assessment, citing *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006). However, "SSR 96-8p only requires *consideration* of all [seven functional] factors [relating to sitting, standing, walking, lifting, carrying, pushing, and pulling], not *enumeration* of all the factors." *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008). SSR 96-8p "does not require written articulation of all seven strength demands." *Id.* at 85. Accordingly, "a written function-by-function analysis is not required." *Id.*; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." (citing SSR 96-8p)).

In this case, the ALJ discussed in narrative form the records of Plaintiff's examining sources. R. at 15-17. The ALJ further found that the opinions of the state agency medical consultants were "largely consistent with the evidence of record as a whole." R. at 18. The ALJ also considered Plaintiff's credibility when determining his RFC. R. at 18. In addition, the ALJ's finding that Plaintiff could perform "a range of low-stress, unskilled, sedentary work" (R. at 18) is sufficient to demonstrate that Plaintiff can perform work on a regular and continuing basis. *See Hines*, 453 F.3d at 563 (stating that ALJ's determination of claimant's RFC implicitly

includes finding that claimant is able to work eight-hour day). Thus, the ALJ's function-by-function assessment and narrative discussion were proper, and substantial evidence supports the ALJ's determination of Plaintiff's RFC. *See Brown v. Astrue*, Civil Action No. TMD 09-1358, 2011 WL 3047635, at *2 (D. Md. July 22, 2011); *Walter v. Astrue*, Civil No. JKS 08-639, 2009 WL 2584817, at *4 (D. Md. Aug. 19, 2009) (concluding that ALJ's "function by function" assessment was adequate because ALJ evaluated medical facts and opinions, as well as claimant's testimony and credibility, in narrative discussion).

Plaintiff further asserts that the ALJ "failed to include any of the limitations assessed by the State Agency physician in his [RFC] assessment," despite affording "significant weight" to that physician's opinion. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 10-1 (citing R. at 18, 137-42). According to Defendant, however, the "postural limitations the ALJ did not include—no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling—do not ordinarily have a significant impact on the broad world of work and would not change the outcome of the case." Def.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 12-1 (citation omitted).

The burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))). In this case, although the ALJ must articulate the

reasons for crediting one doctor's opinion over another's, *see Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987), and must describe the weight given to the opinions of state agency medical consultants, *see* 20 C.F.R. § 416.927(e)(2)(ii), "nothing requires the ALJ to provide reasons for failing to adopt certain limitations identified by the state agency consultants as [Plaintiff] suggests. Failing to adopt all limitations also does not indicate that those limitations were not considered." *Nicolls v. Astrue*, 874 F. Supp. 2d 785, 802 (N.D. Iowa 2012). "Therefore, the ALJ did not err by failing to include every limitation identified by the state agency consultant[]" in his RFC assessment. *Id.*; *see McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("[W]e do not require an ALJ to mechanically list and reject every possible limitation.").

Further, even if the ALJ's omission of the postural limitations mentioned above was erroneous, "this error does not, as the plaintiff argues, require remand." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009). Remand is not required where, despite the ALJ's error, the ALJ would have reached the same result notwithstanding his error. *Id.* (citing *Mickles*, 29 F.3d at 921). Even if the ALJ had included in his RFC assessment the postural limitations as opined by the state agency medical consultant, "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies." *Id.*; *see Coles v. Astrue*, Civil No. JKS 08-321, 2009 WL 3380334, at *3 (D. Md. Oct. 16, 2009) ("[E]ven if the ALJ had adopted [the state agency consultant's] non-exertional limitations, [the claimant] would still be capable of light work and the RFC would be unchanged. *See* Soc. Sec. Ruling 83-14 at *4-5 (certain non-exertional limitations, including but not limited to the 'inability to ascend or descend scaffolding, poles, and ropes' do not significantly affect the ability to perform work)."); SSR 85-15, 1985 WL 56857, at *6-7 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a

17

significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . . [L]imitations on the ability to crawl would be of little significance in the broad world of work.  This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees)."); SSR 83-14, 1983 WL 31254, at *2 ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . . [T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).").  In sum, substantial evidence supports the assessment of Plaintiff's RFC by the ALJ, who applied the correct legal standards in this case.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 12) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.  The Commissioner's decision is **AFFIRMED**.  A separate order shall issue.

Date: May 14, 2014                                         /s/
                                                           Thomas M. DiGirolamo
                                                           United States Magistrate Judge